FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 SEP 16 P 1:31

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| **EILEEN GRAY,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:15cv1185 (GBL/TCB) |
| **NORTHWEST FEDERAL CREDIT UNION,** A Federally Chartered Credit Union, 200 Spring Street Herndon, VA 20170 | |
| | **TRIAL BY JURY DEMANDED** |
| Defendant. | |

## COMPLAINT

(Disability Discrimination, Retaliation, and Failure to Accommodate in Violation of the Americans with Disabilities Act of 1990, as amended; Retaliation in Violation of the Family Medical Leave Act, as amended; and Retaliation in Violation of Public Policy)

COMES NOW, the Plaintiff, EILEEN GRAY ("**Ms. Gray**" or "**Plaintiff**"), by and through her undersigned counsel and moves this Honorable Court for judgment against the Defendant, Northwest Federal Credit Union ("**NWFCU**" or "**Defendant**"), on the grounds and praying for the relief hereinafter set forth:

### INTRODUCTION

This action involves the premediated and malicious discrimination and retaliation by Defendant NWFCU against Plaintiff Ms. Gray on the basis of her disability, her decision to exercise protected leave, and her decision to voice concerns regarding Defendant's flagrant violation of federal overtime compensation laws. Ms. Gray was employed by NWFCU for nearly twenty-nine (29) years and achieved numerous promotions during that time. In or around July

1

2013, due to the circumstances surrounding her disability, Ms. Gray was approved for short term disability as well as medical leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C.A. § 2601 et seq.

Upon her return to work from medical leave, Ms. Gray was not returned to the position of Assistant Vice President of Human Resources, or other similar position; was demoted several times; and eventually terminated. Her requests for reasonable accommodations with respect to her disability during this time were also denied. Additionally, Ms. Gray reported her supervisor's flagrant violation of the Fair Labor Standards Act of 1938 to both her previous supervisor and NWFCU's Human Resources department. One week later, Ms. Gray was terminated from employment. The reason cited for this termination was Ms. Gray's arrival to work <u>five minutes</u> after her scheduled time.

### Parties

1.  Plaintiff, Ms. Gray, is, and at all times relevant hereto, a resident of the Commonwealth of Virginia, specifically residing at 20895 Medinah Court, Ashburn, VA 20147.

2.  Defendant, NWFCU, is a federally chartered credit union doing business in Virginia, with a principal place of business located at 200 Spring Street, Herndon, VA 20170.

### Jurisdiction and Venue

3.  This action is brought by Plaintiff for damages on account of Defendant's discrimination against Plaintiff on the basis of her disability, as prohibited by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*

4.  This action is brought by Plaintiff for damages on account of Defendant's failure to accommodate as prohibited by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*

5. This action is brought by Plaintiff for damages on account of Defendant's retaliation for exercising protected leave under the Family and Medical Leave Act of 1993, 29 U.S.C.A. § 2601 et seq.

6. This action is brought by Plaintiff for damages on account of Defendant's retaliation in violation of public policy following Plaintiff's reporting of a violation of the Fair Labor Standards Act of 1938 ("**FLSA**"), 29 U.S.C. § 201.

7. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 *et seq.*

8. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1) and (d).

9. Plaintiff has satisfied all of the procedural and administrative requirements set forth in Section 706 of Title VII, 42 U.S.C. § 2000e-5, in particular:

   a. On or around November 19, 2014, Plaintiff filed a charge ("**Charge**") with the United States Equal Employment Opportunity Commission ("**EEOC**") alleging discrimination on account of Ms. Gray's disabilities.

   b. The Charge was timely filed with the EEOC within three hundred (300) days from the latest date of discrimination relative to this matter.

   c. The Virginia Human Rights Council enforces state antidiscrimination laws in Virginia with respect to disabilities.

   d. On August 26, 2015, the EEOC issued Plaintiff a notice of dismissal and notice of her suit rights. A true and correct copy of the "Notice of Right to Sue" is attached hereto as **Exhibit A**, and incorporated herein by reference.

   e. The Complaint in this matter was filed with this Court within ninety (90) days from

the receipt of the "Notice of Right to Sue".

## Statement of Facts

10. Ms. Gray worked for Defendant NWFCU for nearly twenty-nine (29) years, receiving a number of promotions throughout her career.

11. Ms. Gray is a disabled person who suffers from a documented mental impairment that substantially limits one or more major life activities ("**Disability**").

12. On or around July 11, 2013, due to the circumstances surrounding her Disability, Ms. Gray was approved for short term disability as well as medical leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C.A. § 2601 et seq. (the "**FMLA**").

13. On or around July 15, 2013, Ms. Gray was admitted to Inova Hospital, which resulted in a nine (9) day hospitalization.

14. Ms. Gray's admission to Inova Hospital was communicated by Ms. Gray's husband to Ms. Phyllis Ziakas ("**Ms. Ziakas**"), NWFCU's Senior Vice President of Human Resources and Ms. Gray's supervisor at the time.

15. Ms. Ziakas was fully aware of Ms. Gray's Disability and the circumstances surrounding it, prior to and at the time of Ms. Gray's medical leave in July 2013.

16. At the time of her medical leave in July 2013, Ms. Gray held the employment position of Assistant Vice President of Human Resources with NWFCU.

17. Ms. Ziakas confirmed Ms. Gray's return to work date as October 3, 2013, and informed Ms. Gray that her position and salary would remain the same upon her return in accordance with the FMLA.

18. At the time of her medical leave in July 2013, Ms. Gray had never been reprimanded for arriving late to work, and her vacation and sick leave reflected her consistent attendance and

punctuality.

19. At the time of her medical leave in July 2013, Ms. Gray had never received any written reprimands, disciplinary actions, or complaints for poor performance.

20. Up until the time of her medical leave in July 2013, Ms. Gray's work schedule consisted of later hours for coverage of the NWFCU Human Resources department.

21. At the time of her medical leave in July 2013, Ms. Gray held a top secret security clearance.

22. On September 19, 2013, during Ms. Gray's approved leave pursuant to the FMLA, Ms. Gray was informed by Ms. Ziakas that her return to employment was now contingent upon the outcome of a reinvestigation regarding her security clearances, despite the fact she completed an investigation two (2) years prior.

23. Per NWFCU's practices and policies, reinvestigations are conducted every five (5) years for employees with top secret security clearances.

24. Upon information and belief, NWFCU's alleged reasoning for reinvestigation stemmed from NWFCU's receipt of a withholding compliance issue from the Internal Revenue Service in April 2013 and lien notice from Spotsylvania County in May 2013.

25. Ms. Gray had informed Ms. Ziakas about these issues previously and that each issue involved marital assets and issues that were hidden from her by Ms. Gray's husband, who was estranged at the time.

26. In the week prior to when Ms. Gray was scheduled to arrive back to work, , Ms. Ziakas informed Ms. Gray that she had been removed from her position as an Assistant Vice President of Human Resources.

27. In fact, Ms. Gray was removed from the Human Resources department all together.

28. Ms. Ziakas informed Ms. Gray that the Assistant Vice President of Human Resources position was filled during Ms. Gray's medical leave.

29. Upon information and belief, Ms. Gray's position as Assistant Vice President of Human Resources position was not filled during her medical leave.

30. Rather, the position was vacant and Mr. Felipe Cofino ("**Mr. Cofino**") filled the position of Assistant Vice President of Human Resources on October 21, 2013.

31. Ms. Gray was offered with the choice to either (i) accept a position of Branch Manager with NWFCU, a position Ms. Gray had no experience with for the past twenty (20) years, or (ii) be terminated.

32. As Assistant Vice President of Human Resources, Ms. Gray received an annual salary of $113,770.92, with growth opportunities.

33. As Branch Manager, Ms. Gray would receive an annual salary of $113,770.92, but with no growth opportunities.

34. Due to her financial situation, which Ms. Ziakas was well aware of, Ms. Gray reluctantly accepted the demoted position.

35. On or around October 1, 2013, Ms. Gray met with Ms. Lori Mason, NWFCU's Vice President of Member Experience and Ms. Gray's new supervisor ("**Ms. Mason**"), and Ms. Ziakas at NWFCU's Herndon, Virginia location.

36. Ms. Gray informed Ms. Mason and Ms. Ziakas that on occasion she may have to attend doctor appointments or other events that would result in her late arrival to work.

37. Ms. Gray further asserted that she was provided with a flexible work schedule while Assistant Vice President of Human Resources.

38. Ms. Gray offered to simply use accumulated sick leave if her arrival time ever became an

issue.

39. Ms. Mason expressed her concern over Ms. Gray's arrival time but ultimately approved of this accommodation.

40. On or about January 5, 2014, Ms. Gray's annual salary was reduced from $113,770.92 to $104,548.00, which amounted to a reduction of $9,222.92 ("**First Reduction**").

41. Upon information and belief, NWFCU's alleged reasoning for this First Reduction was due to a company-wide evaluation of its compensation structure (the "**Benchmark Study**") while working with an outside consultant (the "**Consultant**").

42. Upon information and belief, NWFCU had been working with the Consultant prior to October 2013.

43. Upon information and belief, NWFCU knew or had reason to know as early as October 2013 that Ms. Gray's new position as Branch Manager would be subject to a reduction in pay.

44. Upon information and belief, Ms. Gray's former position as Assistant Vice President of Human Resources was not negatively impacted by the Benchmark Study.

45. Upon information and belief, the Benchmark Study resulted in some employees of NWFCU receiving an increase in pay.

46. By the end of January 2014, Ms. Gray was scheduled to work at multiple NWFCU branch locations in a single workweek, including offices located in Herndon, Chantilly, Gainesville, Leesburg, and Manassas.

47. This hectic and displaced work schedule required Ms. Gray to work nearly sixty (60) hours per week.

48. On January 31, 2014, Ms. Gray obtained a note from her medical doctor, Dr. Malika Seth, M.D. ("**Dr. Seth**"), stating that "[b]ecause of Ms. Gray's current condition, she needs a

more consistent schedule with fewer locations and no more than 5 days per week" ("**Medical Note**"). This Medical Note is attached hereto as **Exhibit B**, and incorporated herein by reference.

49. In or around early February 2014, Ms. Gray communicated to Ms. Mason the contents of the Medical Note.

50. Ms. Gray provided NWFCU with the Medical Note on or about March 11, 2014.

51. Given that Ms. Gray had already lost her position as Assistant Vice President of Human Resources due only to what she believed was her Disability and need for leave pursuant to the FMLA, Mr. Gray did not provide NWFCU the Medical Note until March 2014 for fear that she would be terminated as Branch Manager.

52. On March 18, 2014, subsequent to Ms. Gray providing NWFCU with the Medical Note, Ms. Gray was offered with the another career choice; to either (i) accept a position of Assistant Branch Manager with NWFCU in its Leesburg, Virginia location, which would not require travel, or (ii) be terminated.

53. As Assistant Branch Manager, Ms. Gray would receive an annual salary of $85,678.00, which amounted to a reduction of $18,870.00 relative to the annual salary she was receiving as Branch Manager, and a reduction of $28,092.92 of what she would have received as Assistant Vice President of Human Resources ("**Second Reduction**").

54. Due to her financial situation, which Ms. Ziakas was well aware of, and that Ms. Gray had previously been removed from her position as Assistant Vice President of Human Resources, Ms. Gray reluctantly accepted the demoted position.

55. While at the Leesburg, Virginia location, Ms. Gray's supervisor was Ms. Sherry Heinen ("**Ms. Heinen**").

56. Ms. Heinen implemented a branch policy which required all branch employees, including

Ms. Gray, to arrive at least ten (10) minutes early to work prior to their scheduled time ("the **Branch Policy**").

57. Upon information and belief, no branch employee was being compensated for working an additional ten (10) minutes prior to their scheduled time.

58. In or around April 2014, Ms. Gray voiced her concern to Ms. Mason regarding what Ms. Gray believed to be an overtime pay issue in violation of the FLSA as a result of the Branch Policy implemented by Ms. Heinen.

59. With no action taken with respect to the Branch Policy, in late May 2014, Ms. Gray voiced her concerns to NWFCU's Human Resources department regarding the proposed FLSA violation.

60. Shortly thereafter, a representative of NWFCU informed the branch employees at the Leesburg, Virginia location of the FLSA violation and that each employee would be properly compensated for back pay due to the improper Branch Policy.

61. Upon information and belief, Ms. Heinen was subsequently terminated from her position due to the Branch Policy.

62. On or around June 6, 2014, Ms. Gray met with Ms. Mason and Mr. Cofino.

63. Ms. Gray was informed that she was permanently terminated from employment with NWFCU.

64. The reason cited for this termination was Ms. Gray's alleged late arrival to work, by <u>five minutes</u>, on or around May 23, 2014.

65. In fact, it was revealed at the meeting that no employee or supervisor had complained about any tardiness, but instead it appeared on review of video surveillance that she entered the office at 8:05 AM rather than 8:00 AM.

66. Upon information and belief, no other employees of NWFCU are subject to such surveillance for punctuality.

67. Ms. Gray has been unable, despite reasonable efforts, to find comparable employment since her termination with NWFCU.

## COUNT I
### Failure to Accommodate in Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12101 et seq.

68. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

69. Ms. Gray has a Disability that substantially impairs her ability to work.

70. Specifically, Ms. Gray suffers from a mental illness that requires frequent doctors' visits and limits her ability to work long hours with sporadic scheduling.

71. Ms. Gray provided NWFCU with notice of this Disability on several occasions.

72. On or around October 1, 2013, Ms. Gray met with Ms. Lori Mason, NWFCU's Vice President of Member Experience and Ms. Gray's new supervisor ("**Ms. Mason**"), and Ms. Ziakas at NWFCU's Herndon, Virginia location.

73. Ms. Gray informed Ms. Mason and Ms. Ziakas that on occasion she may have to attend doctor appointments or other events that would result in her late arrival to work.

74. Ms. Gray further asserted that she was provided with a flexible work schedule while Assistant Vice President of Human Resources.

75. Ms. Gray offered to simply use accumulated sick leave if her arrival time ever became an issue.

76. Although Ms. Mason gave her approval of this accommodation, Ms. Gray was later

terminated for tardiness.

77. On or around March 11, 2014 Ms. Gray also presented Ms. Ziakas and with the Medical Note from Dr. Seth advising NWFCU that due to her medical condition, she needed a more consistent schedule and no more than a five-day work week.

78. In response, Ms. Gray was demoted and her salary was reduced.

79. Thereafter, Ms. Gray was terminated from employment.

80. Despite multiple notifications, Ms. Gray was never provided a reasonable accommodation.

81. As such, Ms. Gray was denied employment opportunities despite the fact that she was qualified to perform her job given a reasonable accommodation.

82. Following Ms. Gray's request for a reasonable accommodation, she was demoted, provided a lower salary, and eventually discharged from employment.

83. By its acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee on the basis of Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

84. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

85. As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and

emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

86. In acting as alleged herein, Defendant has acted maliciously, willfully, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

87. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of this suit.

## COUNT II
### Retaliation and Wrongful Discharge in Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12101 et seq.

88. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

89. Ms. Gray has a Disability that substantially impairs her ability to work.

90. Specifically, Ms. Gray suffers from a mental illness that requires frequent doctors' visits and limits her ability to work long hours with sporadic scheduling.

91. Ms. Gray provided NWFCU with notice of this Disability on several occasions.

92. On or around October 1, 2013, Ms. Gray met with Ms. Lori Mason, NWFCU's Vice President of Member Experience and Ms. Gray's new supervisor ("**Ms. Mason**"), and Ms. Ziakas at NWFCU's Herndon, Virginia location.

93. Ms. Gray informed Ms. Mason and Ms. Ziakas that on occasion she may have to attend doctor appointments or other events that would result in her late arrival to work.

94. Ms. Gray further asserted that she was provided with a flexible work schedule while

Assistant Vice President of Human Resources.

95. Ms. Gray offered to simply use accumulated sick leave if her arrival time ever became an issue.

96. Although Ms. Mason gave her approval of this accommodation, Ms. Gray was later terminated for tardiness.

97. On or around March 11, 2014 Ms. Gray also presented Ms. Ziakas and with the Medical Note from Dr. Seth advising NWFCU that due to her medical condition, she needed a more consistent schedule and no more than a five-day work week.

98. In response, Ms. Gray was demoted and her salary was reduced.

99. Thereafter, Ms. Gray was terminated from employment because of her requests for accommodation.

100. By its acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee on the basis of Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

101. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

102. As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to

be proved at trial.

103. In acting as alleged herein, Defendant has acted maliciously, willfully, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

104. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of this suit.

## COUNT III
### Discrimination in Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12101 et seq.

105. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

106. Ms. Gray's employment was terminated due to her Disability and/or Defendant's perception that Ms. Gray was disabled.

107. As a proximate result NWFCU's discrimination against Ms. Gray on the basis of her disability and/or record or perception of disability, Ms. Gray has suffered and continues to suffer a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, future earnings, and expenses, in an amount to be proven at trial.

108. As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

109. In acting as alleged herein, Defendant has acted maliciously, willfully, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

110. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of this suit.

## COUNT IV
### Retaliation in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii).

111. The Plaintiff restates, re-pleads, and incorporates by reference each and every allegation set forth above.

112. Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii).

113. At the time of her leave, Ms. Gray had been employed by NWFCU for nearly twenty-nine (29) years.

114. Further, Ms. Gray had worked at least 1,250 hours for NWFCU during the twelve (12) months prior to her taking medical leaves of absence.

115. Upon information and belief, NWFCU employed in excess of fifty (50) employees within seventy-five (75) miles of the location where Ms. Gray was employed.

116. Ms. Gray requested, and was subsequently granted FMLA qualifying leave, as a result of her mental illnesses, which constitutes a serious health condition within the meaning of the FMLA.

117. Ms. Gray was entitled to leave pursuant to the FMLA and NWFCU was not permitted to retaliate against Ms. Gray for exercising her rights under the FMLA.

118. NWFCU retaliated against Ms. Gray by failing to reinstate her to the same or equivalent position, and instead terminating Ms. Gray for taking FMLA-qualifying leave.

119. NWFCU's conduct was intentional, willful, purposeful, deliberate, and with knowledge that such conduct was in violation of the FMLA.

120. Ms. Gray has suffered severe emotional distress as a result of the NWFCUs actions.

121. As a direct and proximate cause of NWFCU, Ms. Gray suffered numerous damages including but not limited to, lost wages, employment benefits, bonuses, other compensation, costs, and reasonable attorney's fees.

## COUNT V
### Wrongful Discharge in Violation of Public Policy ("*Bowman Claim*")

122. The Plaintiff restates, re-pleads, and incorporates by reference each and every allegation set forth above.

123. The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, mandates certain minimum standard of living requirements with regards to labor and employment.

124. Specifically, FLSA forbids an employer from employing any employee "for a workweek longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times [his or her] regular rate." 29 U.S.C. § 207(a) (1).

125. During her employment at the Leesburg, Virginia NWFCU branch location as Assistant Branch Manager, Ms. Gray became aware that branch employees were required to arrive to work at least ten (10) minutes early.

126. However, NWFCU failed to provide branch employees any overtime or compensation for this additional time in excess of forty (40) hours spent working at the Leesburg, Virginia NWFCU branch.

127. Upon learning of this policy, Ms. Gray reported these FLSA violations to Ms. Mason and

thereafter NWFCU's Human Resources Department.

128. One week after reporting the violations, Ms. Gray was terminated from employment.

129. NWFCU retaliated against Ms. Gray by terminating her for reporting these violations.

130. NWFCU's conduct was intentional, willful, purposeful, deliberate, and with knowledge that such conduct was in violation of public policy.

131. Ms. Gray has suffered severe emotional distress as a result of the NWFCU's actions.

132. As a direct and proximate cause of NWFCU, Ms. Gray suffered numerous damages including but not limited to, lost wages, employment benefits, bonuses, other compensation, costs, and reasonable attorney's fees.

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A. Enter judgment on her behalf against Defendant;

B. Award Plaintiff Ms. Gray compensatory damages and punitive damages;

C. Award Plaintiff Ms. Gray back pay and front pay;

D. Award Plaintiff Ms. Gray her court costs, expenses, attorneys' fees, prejudgment interest and post-judgement interest;

E. Declare that Defendant's conduct is in violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12101 *et seq*, and Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii); and

F. Order that Defendant be prohibited from continuing to maintain its illegal policy, practice or custom of interfering with and retaliating against employees who exercise or who attempt to exercise their rights under the FMLA are to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

G. Award Plaintiff liquidated damages pursuant to the FMLA because Defendant's violations of the FMLA were willful; and

H. Grant such other relief as this Court may consider just and proper.

### DEMAND FOR JURY TRIAL

In accordance with F.R.C.P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Date: September 16, 2015

Respectfully submitted,

EILEEN GRAY,

By: /s/
Robert Powers (VSB No. 80822)
Dirk McClanahan (VSB No. 81208)
MCCLANAHAN POWERS, PLLC
8133 Leesburg Pike, Suite 130
Vienna, VA 22182
Telephone: (703) 520-1326
Facsimile: (703) 828-0205
Email: rpowers@mcplegal.com
dmcclanahan@mcplegal.com
*Attorneys for Plaintiff*